Good morning, and may it please the Court, Barbara Smith for Appellant Courthouse News. The Appellees in this case have managed to touch on the constitutional buzzwords of federalism, comity, abstention, and the Supreme Court's recent abortion jurisprudence. But what each of those arguments ignores is the constitutional right actually at issue in this case, which is to say, the First Amendment. And I'm sure we'll spend some time this morning clearing through the smoke raised by these other arguments, but I do hope the Court will also address the constitutional fire in the room, starting, as the Appellee does for the first time on appeal, with the sovereign immunity argument. I think we're squarely within the confines of Ex Parte Young, particularly as this Court has described that inquiry in cases like McDaniel, where it said this is a straightforward inquiry, and the only thing the Court is asking is whether the allegations in the complaint allege an ongoing violation of federal rights, and two, whether the remedy sought is prospective rather than backward-looking. We meet both of those requirements here, and so I think that there's no question sovereign immunity doesn't apply. Nothing about the Supreme Court's recent emergency decision in Whole Women's Health changes that, and I don't think the Court was purporting to limit the scope of Ex Parte Young to categorically exclude from that doctrine court clerks. If that's what it were doing, it would have said so. And there are numerous other cases in which court clerks and court personnel are properly named as defendants when they are exercising roles that are not judicial in nature, that are administrative or enforcing policies that violate constitutional rights in other ways. So I think the Ex Parte Young argument is a bit of a red herring. And moving to the core of the Court's decision below, which is whether the federal district court should abstain from cases like this, I think the Supreme Court's most recent description of the abstention doctrines in Sprint makes clear that federal courts have an unflagging obligation to exercise federal jurisdiction where it lies. Every 1983 case that alleges a violation of federal constitutional law under a color of state action is going, in some respect, to interfere with state processes. But that doesn't mean that federal courts have an obligation or even an option to abstain in those circumstances unless one of the narrowly construed buckets of Younger or one of the other narrowly construed abstention doctrines is met. On the Sprint question, there is some broad language in that Supreme Court opinion. But having sat on a state Supreme Court for a number of years, this goes to the very heart of what state Supreme Courts do. We make decisions. We made decisions like what the e-filing system would look like, what the procedural rules would be. And so in effect, perhaps, we would be telling the state Supreme Court, because you did, there was a request made to the state court administrator, which works for the state Supreme Court. You'd be telling a state Supreme Court what procedural rules they need to have within their court system. And that seems to me, even if it's not technically covered under Younger and some of the others, to go at the very heart of some of the concerns in those cases. Respectfully, Your Honor, that's not the type of relief we're seeking in this case. We're seeking a simple declaration that the procedure that the state court has opted to adopt violates federal constitutional law, and a simple injunction saying comply with federal constitutional law. The processes, the procedures, the rules that the court clerk opts to utilize to comply with that injunction are totally within her power. So there's nothing about the injunctive relief here that would lead to any sort of intrusion on state sovereignty or any ongoing audit. I'm not sure that's right. I mean, I only have experience in Minnesota. Maybe Missouri is different. But when questions like this arose, we all sat around the table and talked about these questions that here's how we're going to have the e-filing system here. We're going to require the court clerk to accept it. So these are all decisions made at the highest level of the state judiciary. And so I just don't think your description of what's happening is actually correct, unless you tell me Missouri's different. Well, respectfully, Your Honor, I think we could talk about hypothetically what the injunctive relief in this case could look like. Or the court could look to the other cases that have raised this question, including against state courts with their own homegrown e-filing systems. And in none of those cases in which injunctions have been entered has there been any allegation that there's an ongoing federal audit of state courts. In fact, I think federal district court judges have been particularly cognizant of the federalism concerns encompassed within introducing injunctive relief in cases like this. And so they take into account how state court clerks are trying to comply with the First Amendment. Well, let's change it a little bit. So let me give you a hypothetical. Suppose that a state court rule said, you could file a complaint and then it sits there for a year. And we don't require any answer for a year or two years or whatever. And you bring a procedural due process claim and you ask for an injunction, which I think is somewhat similar here to this case. We would then be telling the state court, no, you have to require an answer within a month so that the plaintiff gets procedural due process. Do you think that that would infringe on state sovereignty and the state court system? Well, let me just make clear the scope of the constitutional right I think is at issue here. I represent a media company who's not seeking to litigate any of these cases in state court and doesn't have a dog in the fight on the question how long a litigant should take to respond to a complaint. The only argument they're making is that when these complaints are filed, they're public judicial records entitled to First Amendment access. You're not answering my question. Well, respectfully, Your Honor, I think it's important that what we're seeking here isn't an injunction against any particular state court rule in terms of timing or procedure. We're just asking for access to the complaint. Okay, so I'm going to press you because you're still not answering my question, which is suppose there were a state court rule that said civil actions cannot be released to the public. It's actually in a rule book. Cannot be civil until a clerk has looked over the document and figured out whether it complies with the filing rules. And you would be challenging, so that's in a written rule. Same outcome or different outcome? Well, so I want to make sure I'm answering your question because I'm not trying to avoid it. The First Amendment allegation we're making here is does withholding that complaint for processing violate the First Amendment? That's a merits question that I think a court would have to adjudicate after discovery and at summary judgment or trial. But in this posture, at the motion to dismiss stage, I think all we're required to do is allege a plausible claim. And I think it is a plausible First Amendment claim to say there's a process in this case of withholding until processing. In your example, there would be a written rule that mandated withholding. And so the First Amendment constitutional question in that hypothetical case would be does that violate the First Amendment? Does it meet the press enterprise to scrutiny the Supreme Court has said applies when publicly filed judicial documents are withheld from the press? But that's not a question the court has to answer in this posture, in this case. Well, but that's what you're asking us to answer, which is can that be adjudicated? And what you're telling us is if this was in a formal rule of court of a state court, this claim could still go forward under the First Amendment. Now, you might be right about that. But I want you to understand that that is an exceptional thing for us to do to potentially have in a light case to enjoin a state procedural rule. Respectfully, Your Honor, I think the injunction runs in this case against the court clerk who has a policy of withholding documents that are otherwise protected by the First Amendment. That's the plausible claim we've alleged. And there's nothing about entering that very simple injunction that infringes on any work of the state court. Well, that's what the- Go ahead. Let's step back for a moment, because it sounds to me that this hypothetical has introduced this rule into this discussion. And the rule is different, in the sense that, and I think there's a factual distinction that maybe you can make, and maybe it's just not being made plainly. The problem I have with, if we have this hypothetical rule, and that we are directing a state Supreme Court to somehow modify its rules. And that would be an exceptional thing for us to do. Now, if it's merely a policy, and a policy's kicking around inside a county or district clerk's office, right, that's a different animal factually. And the risk that you run is that by having this conversation that Judge Strauss is having, you could run the risk that you've moved into this place where, well, what we're really doing is some sort of ad hoc balancing of the federal interests at play. And that ad hoc balancing really is not consistent with the abstention doctrine and its, and the younger and its progeny, perhaps. That's right. Right? That's what your argument would be, right? That would be true in this case and in, I think, Judge Strauss' hypothetical. Well, do you really think so? Because in Judge Strauss' hypothetical, I think we're clearly saying at that point that we've got a rule, and we're going to try and mess with this rule, and we are going to go and direct somebody to modify a rule. And that somebody is a state Supreme Court, and there's a different balancing between what state Supreme Courts can do under their constitution. And listen, they are constitutionally empowered to have all the rules and procedure they want. Smart ones, wise ones, dumb ones, they just can't have unconstitutional ones. That's right. Right? And so that's kind of the way that works. And I think that, I think it's a very, it may be a very different animal. On the other hand, once we're down in here, and we're kind of mucking around with the way that the courts are operating, aren't we left with really just the First Amendment question to deal with, right? Because if we go into anything else, then, and I'll just preface this with that, I am the most reversed man on younger abstention cases in America. You can look it up. But I just don't, I don't see, I think it really all is going to turn on what is on the weights at some point on a merit. And the question is, if we have it alive, what are we messing with here? Because we have some things we know that are clear, right? And forgive me for just musing. But on the outside, we know that, for example, if in fact we are directing a state trial court to do something directly on the merits with a pending case, that's a problem, right? Because the state court is exercising a judicial function. Exactly, right? But here, what we're really doing, we're messing with the state court by telling them that, well, you have to have some procedure in place. And so are we micromanaging that court in a way that is appropriate or not? I absolutely think that district court would not be micromanaging the state court clerk in this case if a simple injunction or declaratory relief were entered. I think, as I suggested, the other cases that have litigated this question make that clear. Sometimes, through the course of litigation, rules change and processes change. And when court clerks adapt their processes to conform with the First Amendment, district court judges rightly take that into account. So I hear the hypothetical that you're raising, Judge Strauss, and your thoughts, Judge Erickson, as well, as going to a concern about ongoing federalism and comity concerns as this case develops. And I think, Judge Erickson, your decisions in cases like Dixon and Postauco make clear that when you get to the point of a district court entering injunctive relief, the district court judge still has to be cognizant of those concerns. And in some cases, injunctive relief may not be appropriate because a court clerk is actively trying to comply with the requirements of the First Amendment. You know, I'm going to press a little bit more because, you know, and you may be right legally. You may be absolutely right that abstention is different. But let me tell you, and I'm going to say this again, having sat on a state Supreme Court, interfering with a single state court proceeding is maybe a three on a scale of being annoyed that the federal courts are micromanaging the state courts. Interfering with the way we administer the state court system, you know, I don't do that anymore, is an 11. I mean, on a scale of one to 10, it's an 11. So if they're telling me what to do, given that we have an equal obligation to enforce the Constitution, and maybe you'll tell me that doesn't matter because Younger doesn't cover the situation, that's fine. You might be right under Sprint. But I got to tell you from a federalism and comedy perspective, this is asking for a huge infringement upon the state court system. Respectfully, I don't think it's a huge infringement, and I would be sensitive to that if it were the case. Again, all we're asking for here is for the clerk herself to figure out how to comply with the Constitution. If they want to adopt this e-filing... Is this statewide though? I mean, is this something that's happening only in St. Louis County? You keep saying it's just this clerk, but it actually isn't just this clerk. It's the court system that are making these decisions. Now, maybe you'll tell me that that's not true and it's only St. Louis County. But if it's a state court administrator who was... You asked whether you could have it earlier, then you're talking about the entire state court system. You're talking about the Missouri Supreme Court. The e-filing system is statewide. I think that the injunctive relief being sought here is sufficiently narrow that it's a one-time fix. There's an order that says this violates the Constitution. You've plausibly alleged a constitutional right, and then through discovery and trial, you've proved that that is in fact a violation. I'm declaring that to be so. I, the district court judge, declare that to be so, and I order the court clerk to comply with the Constitution. Single clerk or every clerk in Missouri? Well, in this case, it is the administrator of the courts. So it's both... That's my point. If you're asking for it statewide, the state court administrator works for the Supreme Court. The Supreme Court directs the state court administrator do. So you're not really just asking for injunctive relief for a single court employee. Well, we are asking for a one-time injunction that will fix the constitutional problem and therefore lead to no further meddling. It won't come up again and again and again because there will be a simple fix to the way in which these documents are made available to the press and public. I'm going to press you on that, too, because suppose that you do get the declaration and the injunction, and instead of two weeks now, it takes a week. You're not going to run back to court and say, well, that's not good enough. It needs to be done within one or two days or six hours or five hours. Aren't we really talking about a structural injunction if the relief doesn't get you past the Constitution, in your view, is a constitutional violation? So I think the length of the delay, which here is extremely long, more than 50% of complaints are not available, even after a week. I think addressing that problem to shorten the delay is what Press Enterprise 2 requires the court to do when, after we get through the motion to dismiss, it's addressing discovery and the merits of the claim itself. The government will have an opportunity to say, we can't comply with anything that would require us to release these documents faster than X, Y, or Z for these reasons. And if they can meet the strict scrutiny that Press Enterprise 2 requires, the district court has the opportunity to decide who wins this case. It comes up on appeal. And then this court can decide whether the lengths of the delay are constitutional. That's not a question you have to answer right now. All you have to answer right now is that we've plausibly alleged there could be a constitutional violation and can seek relief for that. Because there is no clear box in Younger in which this case fits, the court can't abstain. And abstaining on the basis of federalism and comity writ large without tying it to one of the Supreme Court's clear abstention doctrines, I think makes a mess of the unanimous decision in Sprint. You might be right. And that's why I started out my question by talking about Sprint. My only point was, I don't think you can say honestly that this case is over with a simple injunction. Because if the injunction doesn't require it to be one day, two days, three days, and Missouri doesn't comply, we're going to be right back where we were. Do you agree with that? To the extent that what you're really concerned about is the injunctive relief as opposed to the declaratory relief, I'd encourage the court to look at the district court's lengthy order in the Schaefer case, which ultimately decided, in light of the federalism and comity concerns here, I don't need to abstain, but an injunction is not appropriate. Declaratory relief will redress the constitutional violation. I think district court judges can be careful about this  in the relief they impose based on the facts and circumstances of the case before them. Sometimes injunctions might be required. In this case, maybe one won't be. The question whether that injunction goes too far is a question you can answer on appeal. It's not one you need to answer hypothetically now, and it certainly isn't one that should be the basis for abstaining from hearing the constitutional claim entirely. Respectfully, it's not often I get to quote Chief Justice John Marshall in oral argument, but he said it would be akin to treason for a federal court to decline to hear a case over which it had jurisdiction. That is a longstanding and deeply-rooted proposition of the very nature of federal courts. When you raise constitutional claims, as we have here, federal courts have an obligation to decide them, and a free-floating respect for comity or federalism cannot overcome that. I think that's what the Supreme Court has made clear in cases like Sprint and Nopesee and all of the other recent abstention cases it's decided. If the court will allow me, I'd like to reserve some time. I love that question, and this will be the easiest question. You've been posed to you this morning because it's a factual question. And it's about this Missouri case net service. Is it true that subscribers to the Missouri case net service have access to these pleadings immediately? So there is an allegation in the complaint that there's access provided to attorneys, but not provided to the press or the public. That's one aspect of the allegations in our complaint. OK, but that's not the question. The question is, do subscribers to Missouri case net have access to the pleadings immediately? I believe that's right, Your Honor, although I... OK, so if your client was a subscriber to Missouri case net, would you be here? Would this lawsuit have been filed? Well, respectfully, I think the question goes to the point of how easy it would be to resolve this constitutional claim if the state chose to do so. It can make filings contemporaneously available, and it has chosen not to make them contemporaneously available to the public and the press, even though attorneys who are members of the bar do have access to those complaints. So if we could solve that problem, I don't think we would be here. OK, the second question is, you know, there was a time when, and some in this room may remember it, when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately. Yes. Now, in this day and time, apparently, there's a processing period, at least that's the allegation, that there's a processing period. And so this gets to why does your client need access, or why does anybody need access to these pleadings before the end of the processing period, which, as I understand it, nothing's happening in the case. The pleading's being examined by the clerk. So what's the importance of having it the instant it reaches the clerk's office as opposed to the end of the processing period? When a lawyer came in in times past to physically deliver a complaint and now electronically submits one online, it is invoking the power of the state courts to file a lawsuit to further a right it alleges has been wronged, and the public and the press have a right to know about that. And to the extent that that complaint is withheld from the public and the press, that's a violation of the First Amendment. I think it's as simple as that, Your Honor. And the government has to justify any delay in keeping that complaint from the public and the press. That is the Press Enterprise 2 inquiry the Supreme Court laid out. You ask first whether this is the kind of document that historically has been available to the public. Civil complaints are those kinds of documents. And then the government has to justify withholding that document under a strict or rigorous scrutiny standard. So I think Press Enterprise 2 answers that question. Thank you. Mr. Johnson, you may proceed. Thank you, and may it please the court. Jeff Johnson for Ms. Gilmer and Ms. Lloyd, who are state judicial officers for the state of Missouri. This is an extraordinary moment for public access to courts, as I think everyone here in the room will recognize. Whether it's streaming court proceedings, holding Zoom trials, or providing access to public records, there are numerous challenges, and the Missouri judiciary has risen to the challenge to do so. And for years, for years, has allowed for public access to the official court record for all citizens and for the press. And that continues to be the case today, and it has been the case for years. The issues here are really whether or not the district court, well, I think the core issue that we've been batting around is, at its core, does the First Amendment require uniformity in how state courts process their dockets and proceed to provide justice to the litigants of their home states, or to the federal judiciary in that case, because the First Amendment applies to all of us in this case. And here, I think the First Amendment doesn't necessarily say that private litigants get to become management consultants for the state judiciaries just by filing a 1983 action in state court. And the district court, and federal courts have long been wary about interfering into the internal machinations, or the machinery of the courts, as recognized in ex parte yonder. But here's the problem I'm having. The First Amendment right, at least other courts have recognized, we're getting into the merits here, but what do you make of the fact that these things are immediately available for users of the e-filing system, lawyers, but they're not immediately available for the court, or for the press, and other people? So I think we should clear up a couple different things, and I do want to address the Judge Shepard's question about subscribers to KSNET. As with all court systems, I think in the United States, where the judiciaries have gone through multiple iterations of how they use technology to provide access to courts and to litigants, there are three court sort of systems. The first is KSNET, which is essentially the equivalent to PACER. And then there's the e-filing system, which is how attorneys interact with courts and put pleadings and other motions before the courts. And then there is a little bit of a hybrid, hybrid uniform court access system behind the scenes that's being transitioned toward. So to answer the question, sorry. To answer the question to Judge Shepard's question about do people on KSNET, from their homes, are they able to see the pleadings immediately? The answer to that is I don't believe so. From my understanding, from public access for KSNET, for members of the public, is that they go on and it's a court rule, I think 4.24, that says what public information for cases is immediately available once the filing has been made for public. And that's a list of the lawyers, the actual pleadings. All court proceedings and schedules are also there. If you want the actual pleadings, what the Missouri Judiciary has done is come to our courts and the public access terminals, which St. Louis County, this isn't in the record, but just for context, St. Louis County has five public access terminals that are open and when you go to those terminals, you can see the pleadings, you can download the pleadings, and I believe you can also print them off in that way. You can also ask the clerk's office and they will also provide access to the records that you're looking for. But that's not immediate, correct? I mean, that could take a little while as alleged in this complaint. So, one of the issues here is like, is it filed or is it not filed, or is it pre-filed? Once it has been accepted by the courts, the clerk, which here, that is the delay that the courthouse news is, says that it's injured by, is just merely the timing of when this is available to everyone, is when it's been, once it's been accepted by the circuit court clerk, then you can go to the court and you can get it through the public access terminals or through the clerk's office, if that answers the question. It does, I got the sense from the briefs though that people who are doing the e-filing and lawyers can access it even, I mean, that's the core of the complaint is they can access it earlier and sometimes because during this pre-filing until the clerk actually approves it, it could be up to two weeks, that 50% of them take more than a week, whereas in the olden days, they could get them out of the bin at the clerk's office. So, I'm really just asking, is that right? Sorry, and to follow on to your question, the answer to that is that is incorrect. As noted in the depositions that were supported against their motion for the preliminary injunction, the only person who has access to the pleading until it has been accepted by a circuit court clerk is the, excuse me, is the clerk's office and the attorney that actually filed the complaint because until it has been accepted, it can still be withdrawn within that time period. Or when it does not meet form requirements, the objective form requirements that are laid out in multiple Supreme Court of Missouri rules and their court operating rules, the courts can return those filings to the attorneys for them to fix it and then refile it again. Can I ask a sprint question, just kind of change up a little bit here where, you know, the Supreme Court did say specifically that the Younger Abstention Doctrine is only applicable where the proceeding falls into one of three categories, and those three categories is one, that it interferes with the criminal prosecution, two, that it's a civil enforcement proceeding that looks like a criminal prosecution, you know, that's like regulatory things, and then the third is that it somehow implicates the state interest in enforcing its own orders and judgments of court, none of which seems to be covering this broad administration area that we're trying to protect here, which seems to get us closer and closer to dancing into this sort of ad hoc balancing of federal interests and comedy. And so why is it wrong to just say, yeah, under sprint, you gotta fall into these three categories, doesn't fall into these three categories, we're not interfering with any proceeding that exists in the courts, we're just saying produce the document, and at this stage, we're only saying, hey, hold one of them their discovery sessions, do what you gotta do, and then get to where we're gonna make a motion for summary judgment and the record's developed so it survives the pleading stage, why is that wrong? So to answer your question, I think the Supreme Court over the decades has been fairly muddy in how they have applied abstention, or approved or disapproved abstention, in sprint, it has come forward and given those three sort of clear categories, however, at the same time, it didn't over- Yeah, but it did say younger, what it said, younger is applicable only where, that seems to be like an attempt to clarify anything that came before it, doesn't it? It certainly is an attempt to clarify anything that came before it, but at the same time, it did not say that the abstention that they approved in Rizzo and that they also approved in O'Shea versus Littleton was wrong, so that means that those two forms of abstention do fall into one of those three categories, until the Supreme Court tells us otherwise, right? Like, the Supreme Court has said, these are our three categories, in all of our cases, fit within these categories, and therefore, this is what we have. To your question, I think the best fit for this case is in the third one, where it talks about the substantial interference with state court proceedings. Yeah, but what proceedings are we actually messing with here? I mean, you're not actually doing anything to any of the proceedings at all. What we're saying is that, oh, for about 230 years, you could walk into a Missouri courthouse, into the clerk's office and say, hey, can I see what's been filed today? And now, all of a sudden, you can't, right? So, I would quibble with your premise that you can't walk into a Missouri courthouse and ask for those things, right? The question is whether or not they're sort of electronically available in that fashion. So, you can still walk into a Missouri, like Courthouse News Service could hire a runner, walk into the courthouse today, and say, show me the papers, please, and they'd be produced. So, there are no papers unless they are pro se filers. Right. In which case, they are scanned in. Can they push a button and print it? I'm uncertain as to whether they could push a button and print it. Oh, yeah, come on, now. Do you really think there's an e-filing system where you can't pull up a document and print a PDF of it? Do you think that exists anywhere in America? I agree with you that you can print the documents. Anyhow, it doesn't matter. My real question is, can you walk into the courthouse and say, can I see this document? If you know what the document is, you can definitely come in and say, you know, may I see this document? I think the issue here is that, potentially, when they have not been accepted for filing yet, the clerk's office, you know, has them in the order that they come in, and is just processing them through. But getting to your point as to whether or not we're interfering with judicial proceedings, the court in Sprint, when it cited this, it was citing to Pennzoil, and it also cited to the Judiz case, which is about civil contempt. The Pennzoil case was about the court process about, in Texas, whether or not Texaco would have had to pay the entire bond, the $13 plus billion bond, to go forward. And they said, they went into a federal court and said, no, you know, you should really say that, you know, having to put up the entire amount of the bond violates due process. And the court said that the courts of appeals should not have, and the district courts, should not have gone into that territory. Council, I want to ask you, so I get opposing counsel a hard time. I'm going to give you an equally hard time, which is you have a lot of, I can think of a lot of hypotheticals that will cause problems for the state. Suppose, and we'll keep it in the filing rule realm, suppose that the state court enacted a filing rule that says no women can file complaints. Terrible rule, awful rule. Would we have to abstain and let that go to state court? Would we not be able to say that that's unconstitutional under the Equal Protection Clause? Well, I think what your honor is asking is what, like, avenue of relief. And I think if you have something like that that violates a clearly established rule, you have personal liability under 14 U.S.C. 1983. They didn't bring individual capacity suits here. They only brought the official capacity suit. And the official capacity suit is, you know, talks about this, let me get this straight, this evidently secret policy of withholding court documents when the Missouri procedures are all laid out in the court operating rules and in the Supreme Court rules. There is no secret policy to withhold documents from anyone. Well, suppose there is. I mean, obviously what's ended up happening is these are lasting sometimes more than a week, two weeks, whatever. It's not as available as it used to be. My only point is it seems to me like we have to be able to adjudicate cases in federal court that involve violations of the Constitution. This one's tough because of what you, or tougher because of what you say, but there can't be a blanket rule that we can't touch that awful policy I just talked about. I think there might be a blanket rule because as we know, sovereign immunity is the general rule that the lower federal courts cannot get involved in certain aspects of the state's sovereignty. And this goes to that core aspect of sovereignty. And as to the avenue of relief, as what we have seen in the SB8 litigation, what the Supreme Court said was, oh, take this to Texas. Those cases will filter up to us and we will exercise our jurisdiction from the state Supreme Court like we would otherwise. But here's the problem. So you're talking about individual liability. Individual liability doesn't necessarily get you at enjoining the policy, right? So that awful policy I just talked about, you really have to go after the, you have to go after folks under their official capacity, right? And again, I ask, could we possibly allow that type of policy to go forward without allowing a lawsuit in federal court for an official capacity claim? I think it's difficult, but I think that in the official capacity, probably not. I think that it's within the sovereign immunity of the states. And as Ex Parte Young states, and as the Virginia Office for Protection and Advocacy versus Stewart, the Supreme Court says that the exception, which is what Ex Parte Young is, the exception to sovereign immunity is limited to those narrow, sorry. No, I'm just, I'm slow, right? So it's hard for me sometimes, but am I hearing you to argue that sovereign immunity protects against a suit to enforce a federal constitutional right so that the courts of the United States may not say that your system is entirely unconstitutional, just like Judge Strass's example. Like, you know, we're not letting women file, you know? How is it possible that that's not something that federal courts can say, we have one of these things called the Constitution, and we don't care who you are, you're not immune to violate the Constitution that you ratified, because you didn't get forced into this here union just because you were forced into it, right? I mean, I don't get that. Am I wrong? So potentially we could be talking about a free-floating power of the federal judiciary to go into these things. But the issue here is they brought a suit under 42 U.S.C. 1983, which says that you can bring actions against persons, right, and the state is not a person, it's well-established. And to the extent that we have concerns about persons using their, acting under color of state law to prevent women from filing entirely, or any other scenario where, you know, there would be clear violations of federal rights, those are provided for by 42 U.S.C. 1983 against people in their individual capacity. And I think that has to be the answer here for that. So you have to walk on it, you then, sorry, a little bit of feedback to me. You have to walk into state court then, and for the injunction. Under your view, the only way we can enjoin an unconstitutional policy is through the injunction. Or through state court, excuse me. So, first off, for this particular issue, in this particular case, there are a couple of different issues that have sort of not been raised because we're sort of not at that point here. But as noted in the documents attached to their motion to dismiss, where the CEO of Courthouse News sent a letter to the Office of the State Court Administrator and also to the St. Louis County Circuit Clerk. He said, hey, we want this immediate online press queue where we can view things remotely, download them all the time, and that this is required by the First Amendment because that right attaches as soon as they are submitted to the court, without the court even really knowing what they are. In that, in the response to that, which is a docket one, two, the State Court Administrator says, well, one, we're working to provide public access for a case like Judge Shepard sort of envisions, which is when you can go online and have remote access to all the pleadings. And then, two, it also says that, at the moment, we can't do this. But if you want this change, you should ask the Missouri Court Automation Committee for this change. But they elected not to do so and instead filed suit in federal court. Well, my understanding of the record is that they actually asked the State Court Administrator whether the State Court Administrator would do something about it. And the State Court Administrator said no. So they went through the proper administrative channels, didn't they? No, I don't think they did. Because they didn't submit it to the Missouri Court Automation Committee, which is what they were required to do. The response from the Court Administrator, which was Ms. Lloyd here, is that this is what you need to do in order for the committee, which includes the Supreme Court Justices, several judges, the commissioner, other private attorneys and members of the bar to decide these rules on how the e-filing and the acceptance process works. And if you want sort of the press queue to be built from Missouri's homegrown system, then that's who you have to ask for for the changes. So respectfully, in that sense, I don't think they really have in that sense. But moving back to sort of like abstention and Whole Woman's Health versus Jackson kind of issues, I think the real key here and what the district court should get credit for is that in every abstention decision, in, well, in almost every abstention decision by the Supreme Court, this court, and other district courts, they've all talked about how, what the limits of the federal equitable power are, right? And that's actually where this is not a smokescreen as to whether or not Whole Woman's Health applies in this case. We have five members of the Supreme Court who said that, you know, Zahra Moody is a real issue as to providing preliminary relief for the Whole Woman's Health. Well, let me ask you this. So, and you heard opposing counsel bring this up, although it was, I asked a series of remedial questions. Suppose we were to say the case goes forward, no abstention, no state sovereign immunity problem. I do have serious doubts about whether we can enjoin state courts functions, but what's wrong with the declaration? What's wrong with declaring the current system is no good, you gotta fix it, and then leaving it to the state court administrator, the automation committee, the state Supreme Court to figure out what the fix is? So your honor asked a good question. Sorry, I'm not trying to be, I'm not trying to obfuscate here. The problem there is that as the Fourth Circuit said in one of the many Schaefers, which when you ask, when opposing counsel came up here and said, oh, well, as the lengthy district court opinion in Schaefer said that they could comply with this. Well, my question to that is which lengthy district court opinion in Schaefer? We have at least two Schaefer district court opinions on this issue of the immediate access. We have two Fourth Circuit questions on this. We have, I think it's like we're up to like, you know, Courthouse Planet News, like four or five in the Ninth Circuit. So the question is like, are federal courts going to continue to meddle in the state courts, you know, prerogatives into, you know, giving justice, giving a forum for justice to the litigants of their state? The answer is that there is lots of meddling, and this isn't the end, because as noted in the reply brief, when they talk about, I think it's page four, note three of their reply brief, they talk about their follow-up litigation to the Schaefer, which is that Virginia courts have a rule that says you can't basically commercialize or like data dredge their online public access court system. And they have brought a challenge to that in the Eastern District of Virginia, and they say, you know, thus chastened, because we've already beat them several times in the Fourth Circuit, that, you know, sovereign immunity doesn't even apply to that. And so here, I think the issue is that, I think the issue here is that she says, go back and look at the district court opinions as to whether or not, I'm sorry, may I proceed? Yes, please, your call. Thank you. She says, well, go back to the district court opinions and see, and she says that this is just a simple injunction, this is just a simple declaration, you know, and this is how it's going to go. And, you know, we just have to tell them to go and fix it and everything will be fine. But the real question is, when you look at those district court opinions, you see that, you know, there's expert testimony going forward about, you know, the specific metrics that the circuit courts of Virginia had to meet in order to be considered sort of like satisfactory toward Courthouse News' decision of what good governance is for filing, you know, for processing the filing of their petitions and other things like that. And the issue here goes to the same thing, is that the reason why sovereign immunity protects this is because this is the internal processes of the courts to provide justice, and this would be a sweeping, a sweeping and a very invasive litigation to go through and have metrics for the St. Louis Circuit Court of like, oh, well, all these petitions are filed on this day. You know, they get processed. Well, why weren't they processed on time? Were there not enough clerk staffing the office? Did the judges have, oh, sorry. You probably should wrap up. Thank you. So in conclusion, we would just note that whether or not this is considered into the abstention doctrines as to Sprint, we would say it was to be the third, the third exception is probably the best. Sprint did not overrule Rizzo or O'Shea versus Littleton, and that the talk about the federalism concerns of comity as to the federal equitable power should be affirmed, and that's what the district court found. Thank you. Thank you. All right, Ms. Smith, I think, has our time expired? Yes. It's an important case, and the panel has had a lot of questions. Take three minutes for rebuttal. I appreciate that. Thank you, Your Honor. I'd like to start by answering the simple question, what Schaefer decision should you look to? And it is the one that decides the case on the merits after discovery and dispositive motions. And I think that that is instructive because it addresses a number of the concerns that have been raised here. The district court judge, after hearing evidence, after carefully looking at the record, considering the concerns raised by the clerk in that case, said, as you suggested, Judge Strauss, I think a declaration is appropriate here, but injunctive relief is not. And Judge Erickson, I think that's precisely what your prior opinions that address Rizzo and the scope of the federal court's equitable authority say courts should do. When you get to the point where a district court is entering an injunction and touching on those important questions of federalism and comity, the court, of course, has to be very careful that it's respectful of those important concerns. And to the extent the injunction is overbroad, to the extent that there's something that does cross the line, whatever it is, the court will have the opportunity to review that when it is entered after trial or summary judgment. But at this stage in the case, at the dispositive motion stage, I think this is a pretty easy case to resolve. All you have to do, as Judge Erickson suggested, is say we're not within one of the three buckets of Younger. Even if we would prefer to avoid this difficult constitutional question, we, federal courts, have an obligation to adjudicate it, just as you would have an obligation to adjudicate a facially unconstitutional ban on women filing civil complaints in county court. You cannot abstain from that just because it touches on important questions of state procedure. You have to adjudicate that. That's what Cohen's v. Virginia says, back in the time of Chief Justice Marshall, up through Justice Scalia in Nopesee, and for the unanimous court in Sprint. There's no question we're not in Younger land. There's no reason to abstain. There's also not a sovereign immunity problem here because when court clerks and court personnel exercise functions that are not judicial in nature, they can and are sued. That was the case in Kitchen, that was the case in the Tenth Circuit, that was the case in Tater in the Fifth Circuit, and it was the case in Kodiak Oil in this circuit. There's no question that court clerks can be proper defendants to suit, and here, because they're not exercising a judicial power, they are the proper defendants to suit. I think once you decide that, we can't abstain, we may not abstain, not we shouldn't, but we may not abstain, and there's not a sovereign immunity problem, this goes back on remand, and it goes through discovery to dispositive motions and trial. And the court need not, if it chooses not to do so, say anything about the merits of the constitutional claim at this point. All you have to say is that we have plausibly alleged a violation of the First Amendment, and the fact that multiple other federal courts of appeal have recognized that First Amendment right, including in the Fourth, the Second, and the Ninth Circuit, means that it's a plausible claim. We also, we would be entering into a circuit split land, I think, but tell me if I'm wrong, because of the Seventh Circuit opinion by Judge Hamilton, would that, if we agreed with the Second, Fourth, and Ninth, would we be necessarily disagreeing with the Seventh? I don't think that that's necessarily the case for this reason. I think the Seventh Circuit is an outlier in the abstention decision, in deciding to abstain, but it didn't go on to address the merits question, whether there is a First Amendment right here. So you can resolve this case without addressing Brown, except to say that you think it's wrong on the question of abstention. I don't think you need to get into the merits of the First Amendment issue, unless you choose to. And on the First Amendment issue, the courts of appeal that have addressed it are unanimous. There is a First Amendment right here. Thank you. Can I ask just a question about O'Shea and Rizzo? It looks like O'Shea and Rizzo really are talking about that somehow, alongside just the general younger abstention cases, there's this classic cases where the proposed relief will actually interfere with the procedures of a state entity, and dictate to them procedures. And so what you end up with are the federal courts sort of directing state employees to do certain things, right? And that seems to be a narrow carve out for Rizzo and O'Shea, right? Is that right, wrong, or do you disagree? I question whether O'Shea and Rizzo survive in a post-sprint world as younger abstention cases. I think O'Shea maybe is an easier question, because younger lays out these three boxes of ongoing state proceedings. Maybe O'Shea says, if there's an eminent contemplated future proceeding that falls into one of those three boxes, that's fine. So really, I think the more difficult case possibly is Rizzo, which isn't an abstention case. It's a standing case. To the extent it teaches us anything about abstention, I think it just talks about the scope of federal courts equitable power, which is the very basis of what we're talking about in the sovereign immunity and abstention context. That is my point about whether an injunction or declaratory relief is appropriate and how far an injunction can go. Maybe Rizzo is instructive on those questions. And when we have an injunction in this case, the court can address whether the district court has gone too far. Thank you. Thank you. I appreciate your answers. Thank you, counsel. The case has been well argued, and it is submitted. And the court will render a decision as soon as possible. And counsel, with that, you may stand aside.